FREDA JAKOWENKO, ADMX., v. DES MOINES LIFE ASSOCIATION.

1. REQUISITES OF RECORD ON ERROR.

When objections are sustained to questions asked a witness on the trial, and exceptions are reserved to the ruling, the record on the reviewing court should show what the answers to such questions would have been.

2. DAMAGES FOR BREACH OF CONTRACT—EVIDENCE.

In an action by an insurance agent against his company for breach of contract of employment, by which he was to be allowed a commission on business secured, without any allowance for expenses, such agent cannot prove as part of the damages for the breach, any expenses he was put to in conducting the business.

3. CONTRACT EMPLOYING INSURANCE AGENT—CONSTRUCTION.

When such contract provided that an average of a certain amount of insurance should be furnished by the agent annually, and such contract is broken by the company after running eighteen months, the annual average during that time cannot be determined, and instruction to the jury what it would be or how to determine it, would be erroneous.

4. USE OF MORPHINE NO CAUSE FOR BREAKING CONTRACT.

The habitual use of morphine by the party to a contract for services, who is to perform the services thereunder, is not of itself sufficient cause for terminating the contract, unless its effect is to prevent the performance of such services, and evidence of the general effect of the drug is sufficient.

HEARD ON ERROR.

*Otto H. Fish*, for plaintiff in error.

*Robert Ramsey*, contra.

GIFFEN, J.

This action was commenced by plaintiff's intestate to recover damages for the breach of a contract of employment as general agent of the defendant insurance association  The original contract of April 1, 1895, provided for his appointment as manager for the association in certain counties in the state of Kentucky; that he devote his full time and attention to the association; that he receive seventy per cent. of the first year's business, also a renewal of one dollar per thousand annually thereafter, " providing an average of three hundred thousand dollars of insurance, is furnished annually from said counties." Subsequently three counties in Ohio were added to his territory with the proviso that an average of one hundred thousand dollars of insurance be furnished annually.

On October 5, 1896, the defendant canceled the agency. Plaintiff avers full performance of the contract, and that defendant without good cause terminated the agency.

There being a verdict and judgment for the defendant, error is prosecuted by the plaintiff upon a number of grounds. Many exceptions are reserved to the ruling of the court in sustaining objections to questions asked by plaintiff's counsel; but in all such cases, except perhaps two, there is no statement in the record of what the answer would be if the witness were permitted to answer, and hence it can not be determined

Jakowenko v. Life Insurance.

whether the ruling was prejudicial. In one of the excepted cases at page 32 of the bill of exceptions the court modified its ruling at page 76, and thereby cured the error if any was committed.

At page 49 Mr. Jakowenko was asked this question: "How much expense did you incur in prosecuting this business for the company?" By the terms of the contract he was prohibited from incurring any indebtedness in the name of the association, and was to receive as compensation a per cent. only on the business secured. His expense might be much or little, but could not be charged to the association, nor was it competent evidence in ascertaining the damages sustained. The item of $190.50 for renewals at one dollar per thousand was not expense, but represented commissions due, and might have been shown as such.

It is claimed that the court erred in charging the jury, in substance, that if the plaintiff failed to secure at the rate of $300,000 of insurance annually during the existence of the contract, the defendant was justified in rescinding the same. The court said: "To illustrate, if it was two years, it would be $600,000 in one case and $200,000 in the other; and if it was a year and a half, it would be $150,000 in one instance and $450,000 in the other, and so forth. In determining the average you will take the time during which the contract was in existence into consideration."

If the illustration given by the court is followed no annual average is ascertained, but only a fixed sum for one year and a proportionate amount for a fraction of a year. If, on the other hand, the contract continued for two or more years, with different amounts each year, the sum of all divided by the number of years would give the annual average, so that although the receipts the first year were less than $300,000, and those of the second year as much more, still the total amount would produce an annual average of $300,000. "Average" is defined to be "mean proportion," and in order to determine it there must be two or more units of which it is the mean. This contract was in force only one year and about six months, hence it was impossible to determine at the end of that period what the annual average would be, and we think the court erred in its charge on this point.

There was no exception taken to such charge, and hence it is claimed that the error will not avail the plaintiff. Our Supreme Court has said:

"Where the ground of error is the refusal of the court to grant a new trial, in a case where the verdict is alleged to be against the law or evidence, and a bill of exceptions is taken, * * * which embodies the charge * * * as well as all the evidence, the court, in determining whether a new trial ought to have been granted, will look to the charge in connection with the evidence," whether it was excepted to or not, "with a view of determining under all the facts and circumstances of the case whether substantial justice has been done or a new trial ought to be granted." Marietta & C. R. R. Co. v. Strader & Co., 29 Ohio St., 448, 452.

Applying this rule to the case before us and we are satisfied that substantial justice has not been done, as the evidence tended strongly to prove, if it did not fully establish, a waiver by the defendant of the provision of the contract for a certain annual average, and the court in no way qualified or limited the effect of such provision of the contract by reason of this evidence.

It is urged, however, that Jakowenko used morphine habitually, which alone was cause sufficient for his discharge. The evidence abundantly shows that he daily took morphine, and he himself offered to tell the jury why he did so, but the court, upon objection by defendant, refused to allow him. It is not so clear that this practice or habit prevented him from performing the things required of him by the contract. He agreed to devote his time and attention to the business of the association, and the witnesses who testify on this point do not say that, by reason of the use of morphine, he failed to devote his time and attention to the business, but that the general effect of the drug is to prevent one from giving proper attention to business. The essential fact to be shown was his failure to perform, and not the cause of such failure. The better evidence would have been the facts showing how and when he neglected his duties as agent.

If we eliminate from the case the evidence of the use of morphine and the question of average insurance, it is not probable that the jury would have returned a verdict for the defendant, and we think, therefore, that the judgment should be reversed.